J. Kent Rutledge, #5-1392
Corinne E. Rutledge, #5-2480
LATHROP & RUTLEDGE, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY 82003-4068
307-632-0554
307-635-4502 (Fax)

Colin Smith (*pro hac vice*)
Robert Tonn (*pro hac vice*)
HOLLAND & KNIGHT LLP
131 South Dearborn Street
30th Floor
Chicago, IL 60603
312-263-3600
312-578-6666 (Fax)

*Attorneys for Defendant Bridgestone Americas Tire Operations, LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF WYOMING

| | |
|---|---|
| AARON RICHARD,<br>    Plaintiff,<br><br>vs.<br><br>BRIDGESTONE AMERICA TIRE OPERATIONS, LLC; FEDEX GROUND PACKAGE SYSTEM, INC.; and JOHN DOE CORPORATIONS 1-3<br><br>    Defendants. | Civil No. 18-CV-112-SWS<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT BRIDGESTONE AMERICAS' MOTION FOR SUMMARY JUDGMENT** |

Defendant Bridgestone Americas Tire Operations, LLC ("Bridgestone Americas") asks the Court to grant it summary judgment on all claims in this matter. Now that all parties have disclosed expert opinions, it is clear that there is no competent evidence supporting any theory

of liability against Bridgestone Americas and summary judgment is, therefore, appropriate as a matter of law.

## FACTUAL BACKGROUND

### A. The Accident

This case arises from a November 8, 2014 multi-vehicle crash on Interstate 80 near Cheyenne. *See* Compl. ¶¶ 12-15, ECF No. 1. At that time, a westbound tractor and tandem trailer rig operated by or on behalf of Defendant FedEx Ground Package System, Inc. ("FedEx") went out of control, crossed the median, struck the side of Plaintiff Aaron Richard's eastbound minivan, and then collided head-on with another eastbound vehicle. *Id.*

Richard contends that a failure of the left front Bridgestone R283 tire (also referred to as a Bridgestone V-Steel Rib R283 Ecopia tire) was one of the reasons the FedEx Ground driver lost control of the tractor-trailer. *Id.* That tire product is the subject of the product liability claims in Richard's complaint.

### B. The Product Liability Claims

Richard filed his Complaint (ECF No. 1) on July 9, 2018. That complaint remains the operative statement of his claims in this case. Among other claims, Richard asserts that the tire was in "a defective, dangerous condition at the time of its sale." *Id.* at ¶18. Richard then went on to more specifically assert claims sounding in strict products liability, marketing defects and misrepresentations, negligence, and warranty. *Id.* at ¶¶19-24. Richard added a claim for punitive damages against Bridgestone Americas because of an alleged failure to "have in place a system that would capture and replace defective tires." *Id.* at ¶¶27-29.

## C. The Expert Disclosures

The parties have now made their expert disclosures and provided reports of retained experts, as required by the Court's January 8, 2019 Order Amending the Initial Pretrial Order *See* Am. Initial Pretrial Order, ECF No. 31. Those disclosures and reports make it clear that no party and no expert now intends to criticize the tire product at issue or Bridgestone Americas' conduct with respect to it. In fact, all of the experts, after examining the tire at issue, unanimously attribute the cause of the tire failure to damage and/or improper maintenance and usage conditions the tire sustained after it was sold and put in service. The positions of the parties' tire experts are summarized as follows:

### 1. Plaintiff's Tire Expert John Smith

Plaintiff's retained tire expert John Smith is an engineer who had a long career in the tire industry and years of forensic tire failure analysis experience. His report and resume, as produced by Richard in this case, are attached as Exhibit A.

Mr. Smith set forth the following opinions, among others, in his report:

> C. Careful consideration of the tires, in terms of inspection, analysis, and based on my training and experience, did not reveal to me any defects in design or manufacture. The tires, based on my examination, did not contain a defect in the adhesion system, and presented nothing that appeared to me to be in the nature of contamination or improper use of materials. I did not see any processing problems or other manufacturing problems associated with the tires. The various components of the tires appeared to be appropriately designed, developed, and constructed, including the carcass, bead, inner liner, tread, belts, and associated components.
>
> * * *
>
> E. The failure of the, left front, incident tire is directly related to chronically operating the tire in an under inflated/ overdeflected condition. Evidence of underinflated operation in the left front tire is the heat discoloration

3

>   observed throughout the tire, the heat reverted rubber observed in the separate piece of tread and steel belts, and the wheel flange grooving observed in the bead areas of the tire.
>
> F.  A review of the GPS data from the vehicle indicate that it was operated at high speed. High speed operation causes a tire to run hotter than normal. This is especially true in an underinflated tire.
>
> * * *
>
> H.  The left front additionally has suffered a severe impact in the upper sidewall as evidenced by broken ply wires in that area of impact. Although this is not primary cause of the tire failure it is a contributing factor since the tire is weakened in this area.

Exhibit A, pp., 8-9.

It thus appears that Richard has retreated from the claims in his complaint and no longer contends that the Bridgestone R283 tire at issue is defective or inadequate or that Bridgestone Americas acted improperly with respect to it.

## 2. FedEx's Tire Expert Kenneth Pearl

FedEx's retained tire expert Kenneth Pearl is an engineer who worked in the tire industry for approximately ten years and has since been an independent engineering consultant for a number of years, consulting on issues that include forensic tire failure analysis. His report and resume, as produced by FedEx in this case, are attached as Exhibit B.

Mr. Pearl's report does not identify any design or manufacturing defects or deficiencies in the tire at issue. *See* Exhibit B. Nor does he in any way suggest that Bridgestone Americas acted improperly or inadequately with respect to the tire. *Id.* He notes that portions of the tire are missing, making him unable to conclusively determine what initiated the separation failure of the tire. *Id.* at p. 7. Pearl does, however, go on to attribute the tire failure to the fact that "it is likely that both front tires were damaged by some road hazard impact." *Id.* at p. 8.

### 3. Bridgestone Americas' Tire Experts Brian Queiser and Joseph Grant

Bridgestone Americas produced the reports of two tire experts: independent consultant Joseph Grant and its in-house Director of Product Analysis, Brian Queiser. Mr. Grant is an engineer who had a thirty-five year career in the tire industry, the latter part of which focused on tire failure analysis, and has been an independent tire analyst for more than ten years. His report and curriculum vitae are attached as Exhibit C. Mr. Queiser, who has multiple engineering degrees, has worked for Bridgestone Americas and its predecessors for more than twenty-five years and has been with its in-house product analysis unit for the past eighteen years. His report and curriculum vitae are attached as Exhibit D.

Mr. Grant's report clearly concludes that the Bridgestone R283 tire at issue is not in any respect deficient and that Bridgestone Americas acted appropriately with respect to it:

1) The design of the left front tire is not defective or unreasonably dangerous. The design of the tire is consistent with those generally used in the tire industry for this application at the time it was manufactured. The tire did not contain any manufacturing condition or defect that would have been a cause of the tire failure.

2) The subject tire was reasonably and appropriately designed, manufactured, tested, stamped and labeled, and complied with applicable federal regulations and industry standards governing tires, including Federal Motor Vehicle Safety Standard 119. The stated purpose of these regulations is to protect the public against unreasonable risk of accidents involving motor vehicle or motor vehicle equipment including tires. These safety regulations include both performance and tire identification or labeling standards.

\* \* \*

3) The left front tire at issue experienced a detachment of a majority of the tread and all four (4) steel belts. This condition alone does not mean the left front tire is defective. Tread and steel belt detachments occur for a variety of reasons with the vast majority of tread and steel

> belt detachments (full and partial) occurring as a result of damage from in-service abuse such as overdeflected operation, cuts, punctures, improperly repaired punctures, wear into the belt structure and/or road hazard impact injuries.

Exhibit C, p. 10.

Like the experts proffered by Richard and FedEx, Mr. Grant also attributes the failure of the tire to post-sale damage and improper use:

> 4) The left front tire at issue experienced a detachment of a majority of the tread and all four (4) steel belts as a result of overdeflected operation and speed. Overdeflected operation is caused by overloading, underinflation or a combination of both. Additionally, excessive speed contributed to the deterioration of the tire resulting in the detachment of a majority of the tread and all four (4) steel belts.
>
> * * *
>
> 10) The left front tire also exhibits road hazard impact damage that contributed to the failure of the tire, which was already significantly damaged and weakened from overdeflected operation and excessive speed.
>
> 11) The left front tire at issue was not in a defective condition or unreasonably dangerous at the time it left Bridgestone's hands. The left front tire underwent a substantial change in its condition after it left Bridgestone. The left front tire at issue in this case failed because the tire suffered a combination of the service conditions and abuses that changed its condition substantially after it left Bridgestone.

Exhibit C, pp. 12-14.

Mr. Queiser reached similar conclusions based upon his examination of the tire and his evaluation of the facts surrounding its use and maintenance. His report includes the following opinions:

> 1. Bridgestone V-Steel Rib R283 tires were competently and appropriately designed and manufactured in accordance with tire industry practices utilizing proven design

6

principles, compounds, materials, and manufacturing techniques. They were designed and manufactured to comply with DOT Federal Motor Vehicle Safety Standards (including 49 CFR§571.119), tire industry standards, and BATO standards applicable at the time of production. R283 tires have not been subject to recall, are not defective or unreasonably dangerous in design, and are not known to have systemic manufacturing defects or deficiencies affecting them.

2. The subject left front tire submitted for examination, a 295/75R22.5 Load Range G Bridgestone V-Steel Rib R283 was reasonably and appropriately designed, manufactured, marketed, and sold by BATO. The subject tire was not defective or unreasonably dangerous in design or manufacture and was fit for the purposes for which it was intended. The tire complied with the DOT Federal Motor Vehicle Safety Standards (including 49CFR§571.19), tire industry standards, and BATO standards applicable at the time of production.

\* \* \*

4. The mere fact that the tread/belt detachment, or any other type of failure, occurs does not indicate that the tire malfunctioned or was defective. All makes, models, and sizes of tires are subject to failure, which can occur for a number of reasons not related to the design or manufacture of the tire. Conditions that can cause tire failure (such as a tread/belt detachment) include overloading, underinflation, punctures, improper repairs, road hazard damage, impact damage, mounting damage and so forth. These conditions result in physical changes to the tire and/or affect the stresses and strains subjected to the tire's components.

5. The cause of the failure of the subject left front tire was damage from overdeflected operation that was exacerbated by usage at excessive speeds. Subsequently, the tire also sustained impact damage. At the time of the failure, the tire had apparently been driven over 50,000 miles.

\* \* \*

12. The subject left front tire was appropriately marked, consistent with industry practices and regulatory requirements. BATO provided clear and appropriate information and recommendations regarding application and intended use, including for speed. The actual speed

7

recommendations for truck/bus tires are dependent on a variety of factors including the vehicle application, type of service, and maintenance practices.

Exhibit D, pp. 17, 19.

The bottom line is that there is no dispute amongst the tire experts on any issue that is material to this motion. No expert is offered to criticize the design, manufacture, or suitability of the tire as originally produced and sold by Bridgestone Americas. No expert criticizes any conduct of Bridgestone Americas with respect to the tire, or contends any such conduct was a cause of the accident. And while the experts may have some immaterial disagreements about the cause or nature of the post-sale damage sustained by the tire, they are again unanimous in attributing the cause of the tire's failure to such damage.

## STATEMENT OF UNDISPUTED FACTS

Bridgestone Americas submits that the following facts material to this motion are undisputed and require entry of summary judgment on the claims raised against it by Plaintiff:

1. Plaintiff Aaron Richard alleges that one of the causes of the November 8, 2014 vehicular crash that forms the basis of this case was a failure of the left front, driver's side tire on the tractor operated by FedEx Ground Package System, Inc.

**Basis:** Compl. ¶¶ 9, 14-15, ECF No. 1.

2. The left front tire from the FedEx tractor has been identified by Richard's tire expert John Smith as a Bridgestone R283 V-Steel Rib Ecopia tire in size 295/75R22.5 bearing DOT serial number 2CBT3WU1314.

**Basis:** Smith Report, Exhibit A, p. 7.

3. The tire experts of the other parties also confirm that the tire provided to them for inspection had the same identifying information.

**Basis:** Exhibits B, p. 5; Exhibit C, p. 4; Exhibit D, p. 1.

4. All parties have served and filed expert disclosures and reports pursuant to the Court's January 8, 2019 Order Amending Initial Pretrial Order.

**Basis:** Am. Initial Pretrial Order, ECF No. 31; Designation of Expert Witnesses by Plaintiff Aaron Richard, ECF No. 32; Designation of Expert Witnesses by Defendant Bridgestone America Tire Operations LLC, ECF No. 40; Designation of Expert Witnesses by Defendant FedEx Ground Package System Inc., ECF No. 41; Exhibits A-D.

4. None of the tire experts endorsed by any of the parties have identified any defect, deficiency, or inadequacy in the tire at issue as it was originally sold by Bridgestone Americas.

**Basis:** *See generally*, Exhibits A-D.

5. None of the tire experts endorsed by any of the parties have identified any improper or negligent conduct with respect to the sale of the tire at issue by Bridgestone Americas.

**Basis:** *See generally*, Exhibits A-D.

6. Each of the tire experts endorsed by each of the parties attribute the cause of the failure of the tire at issue to damage, improper maintenance, or improper use conditions that changed its condition after it was sold by Bridgestone Americas.

**Basis:** Exhibit A, pp. 8-9; Exhibit B, p. 8; Exhibit C, pp. 12-14; Exhibit D, pp. 17-18.

## ARGUMENT

**A.  Legal Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See*, Fed. R. Civ. P. 56(c). *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). To prevail on a motion for summary judgment, the moving party must show the lack of a genuine issue of material fact. *Teets v. Great-W. Life & Annuity Ins. Co.*, ---

F.3d ---, No. 18-1019, 2019 WL 1760113, at *6 (10th Cir. Mar. 27, 2019). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Id.* (quoting *Celotex*, 477 U.S. at 322). Without proof of an essential element of the non-movant's case, there can be no genuine issue as to any material fact, and the movant is entitled to summary judgment. *Quantum Management Group, Ltd. v. University of Chicago Hospitals*, 283 F.3d 901, 905 (7th Cir. 2002).

### B. Bridgestone Americas Is Entitled to Summary Judgment Because there is No Expert Testimony to Establish Liability

"[T]he highly technical nature of tire design and tire-failure analysis is well outside the ken of a jury, and thus expert testimony [is] required to establish the standard of care." *Ho v. Michelin N. Am., Inc.*, 520 Fed. Appx. 658, 667 (10th Cir. 2013). In *Ho v. Michelin*, the appellate court concluded that, under Kansas law, the product liability claim at issue required expert testimony. *Id.* The "well-established test for determining whether expert testimony is required under Kansas law is whether the subject matter is too complex to fall within the common knowledge of the jury and is beyond the capability of a lay person to decide." *Id.*

That same standard applies under Wyoming law. *See, e.g., Vassos v. Roussalis*, 625

#67592765_v3

P.2d 768, 773 (Wyo. 1981) ("[I]f the defendant's conduct is so technical as to be beyond the common knowledge of the jury, the jury will need the assistance of testimony and opinions of experts."). Moreover, "if the law requires expert testimony to show that the defendant's conduct is subject to a standard, and that his specific acts or omissions violated that standard, a plaintiff who introduces no such expert testimony to establish a breach of the standard raises no fact issue to submit to the trier of fact." *Hatch v. Walton*, 343 P.3d 390, 396-398 (Wyo. 2015) (reversing an award for damages because expert testimony was required to prove a defect resulted from substandard workmanship as a matter of law).

Courts in the Tenth Circuit have held that expert testimony is required to prove the existence of a defect in product liability actions involving allegedly defective tires, electrical systems, pharmaceuticals, medical devices and malpractice actions. *See, e.g., Ho v. Michelin*, 520 Fed. Appx. at 667 (affirming the district court's decision granting summary judgment in tire manufacturer's favor where plaintiff failed to introduce expert testimony demonstrating that the tires were defective); *Rodgers v. Beechcraft Corp.*, No. 17-5045, 2018 WL 6615315, at *28 (10th Cir. Dec. 14, 2018) (granting summary judgment to defendants where plaintiffs failed to provide expert testimony that was required on the claims related to electrical system defects); *Manous v. Mylan Pharm. Inc.*, 982 F. Supp. 2d 1282, 1283 (W.D. Okla. 2013) (granting defendant's motion for summary judgment because plaintiff could not proceed without an expert to explain his contentions regarding the defective manufacture of fentanyl patches); *Boucher v. Zimmer, Inc.*, No. 2:06CV380 DAK, 2010 WL 3815706, at *4. (D. Utah Sept. 27, 2010) ("Where plaintiffs have failed to offer expert testimony in medical device cases, summary judgment is warranted."); *Wayt v. Miller*, No. 01-CV-1068-D, 2002 WL 32443035, at *2 (D. Wyo. Nov. 21, 2002) (granting motion for summary judgment because an expert witness is required in legal malpractice actions); *Thomas v. Metz*, 714 P.2d 1205, 1206

11

(Wyo. 1986) ("We have heretofore recognized the need for expert testimony in medical malpractice actions.").

In the present case, without disclosed expert testimony to establish that the left front tire was in some way deficient or that Bridgestone Americas acted improperly with respect to it, Richard's claims against Bridgestone Americas cannot stand. As *Celotex, supra*, and its progeny instruct, the only burden on the moving party under Rule 56 is to inform the court of the basis of the motion and identify the supporting materials. 477 U.S. at 323; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). Bridgestone Americas is obliged only to point out that Richard has no evidence to support his claims – it has no obligation to disprove or negate Richard's claims. The expert disclosures, however, clearly indicate that the expert evidence in this case is in fact unanimously contrary to those claims.

## CONCLUSION

There is no genuine issue with respect to Plaintiff Aaron Richard's claims against Bridgestone Americas. Therefore, Bridgestone Americas Tire Operations, LLC respectfully requests that the Court grant summary judgment in its favor on all claims in this case as a matter of law.

DATED this 10th day of May, 2019.

/s/ Robert Tonn

Colin Smith (*pro hac vice*)
Robert Tonn (*pro hac vice*)
HOLLAND & KNIGHT LLP
131 South Dearborn Street
30th Floor
Chicago, IL  60603
312-263-3600
312-578-6666 (Fax)

J. Kent Rutledge, #5-1392
Corinne E. Rutledge, #5-2480
LATHROP & RUTLEDGE, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY 82003-4068
307-632-0554
307-635-4502 (Fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **Defendant Bridgestone Americas' Memorandum in Support of Motion for Summary Judgment** was filed electronically through the CM/ECF system on this 10th day of May, 2019 and thereby served upon the following:

Noah W. Drew
The Spence Law Firm, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
drew@spencelawyers.com

Tim Semelroth
RSH Legal, P.C.
425 2nd Street, Suite 1140
Cedar Rapids, IA 52401
tsemelroth@fightingforfairness.com

David J. Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
schaller@wtotrial.com

David E. Shields
Williams, Porter, Day & Neville, P.C.
159 N. Wolcott Street, Suite 400
Casper, WY 82601
dshields@wpdn.net

*/s/ Robert E. Tonn*